**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| IDRIS ABDUS-SHAHID | * | |
| | * | |
| PLAINTIFF | * | |
| v. | * | Case Number:_____ |
| | * | |
| MAYOR AND CITY COUNCIL | * | |
| OF BALTIMORE CITY *et al.* | * | |
| | * | |
| DEFENDANT | * | |
| | * | |

*******************************************************************************

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Idris Abdus-Shahid, by and through his attorney Mohamed M. Bamba, Esq.*,* pursuant to Fed. R. Civ. 3 hereby files this Complaint against the Mayor and City Council of Baltimore, and for good cause states as follows:

**PARTIES**

1. Plaintiff, Idris Abdus-Shahid (hereinafter "Mr. Shahid") is an African American Muslim male.
2. Defendant, Mayor and City Council of Baltimore City (hereinafter "the City").
3. Defendant, Baltimore Department of Transportation (hereinafter "DOT").

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

5. This Court may exercise supplemental jurisdiction over state-law claims that the court would not otherwise have subject matter jurisdiction to hear, as long as the claims are part of the same case or controversy as the claims over which the court has original jurisdiction (28 U.S.C. § 1367(a))

6. Venue is proper here, as the Defendants are subject to the personal jurisdiction of this Court because Defendants live, work, and maintain facility and business operations in this District, and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391 (e);

## STATEMENT OF FACTS

7. In April 2020, Chief Bimal Devkota (hereinafter "Bimal"), while working as an employee and agent for the City and DOT, assigned the Plaintiff to the Project Manager position for Operation Orange Cone (Hereinafter "OOC").
8. Project Managers are Engineer IIs, which is a different job classification and civil service position from that of the Plaintiff.
9. The Plaintiff's job classification and civil service position is Construction Supervisor II.
10. However, upon Bimal's directive, the Plaintiff immediately assumed the duties of the Project Manager for OOC.
11. While performing the duties of Project Manager, the Plaintiff learned that he might be entitled to out of title pay.
12. An employee is entitled to out of title pay when he performs duties that are outside the scope of his job classification title.
13. In the Project Manager role, the Plaintiff was required to calculate and manage the OOC data, which is outside the Construction Project Supervisor II's job duties and requirements. Thus, the Plaintiff believed he might be entitled to out of title pay.
14. On October 9, 2020, the Plaintiff formally requested out of title pay from Chief III Bimal Devkota.
15. On October 19, 2020, Bimal, acting as an agent of the City denied the Plaintiff's request for out of title pay because of the Plaintiff's skin color and race.
16. Bimal is a Hindu of Indian decent whose actions demonstrate that he is influenced by the Indian cast system.
17. In the Indian cast system, darker skinned people are discriminated against and treated as lesser than lighter skinned people.

18. On several occasions, Bimal has exhibited and projected the prejudice and racism of the Indian cast system onto the Plaintiff.
19. After denying the Plaintiff's request for out of title pay, Bimal stated to the Plaintiff, "Idris, you do know you are the highest paid black CPS-II?" and in the past when the Plaintiff complained about the unfair treatment he received in comparison to his white female colleague, Bimal stated to the Plaintiff, "I'm going to be your lawyer on this one, Jessica is white you are black, you're not going to win, I'm transferring her …"
20. On October 26, 2020, the Plaintiff filed a grievance with the Department of Transportation (hereinafter "DOT"), wherein he claimed that Bimal denied him out of title pay. Also, in the same grievance, the Plaintiff claimed that Bimal intentional lowered the Plaintiff's Paid for Performance (PFP) evaluation, without just cause.
21. From October 26, 2020 to February 2021, the Plaintiff in good faith requested a first and second step meeting with Bimal pursuant to Grievance Procedure AM-210-1-1, to address Bimal's denial of the Plaintiff's out of title pay request.
22. In violation of Grievance Procedure AM-210-1-1, Bimal refused to meet with the Plaintiff to explain the denial of Plaintiff's out of title pay.
23. On February 2, 2021, in retaliation for Plaintiff reporting bulling, harassment, color discrimination and retaliation to the Baltimore City's Employee Assistance Program (EAP), Bimal issued a frivolous and malicious disciplinary action against the Plaintiff, where Bimal accused the Plaintiff of lack of communication and poor performance; which has never been reflected in the Plaintiff's performance evaluations.
24. On February 4, 2021, the Plaintiff filed a grievance with DOT against Bimal for issuing a frivolous written warning against him.
25. Since February 2021, the Plaintiff has been receiving counseling treatment as a result of the stress and anxiety he suffers from, due to the Defendants' conduct.
26. On February 24, 2021, the Plaintiff filed a complaint against his supervisor to the Department of Transportation's Human Resource office (DOT-HR) for interference, harassment and discrimination during his grievance procedure.
27. On February 26, 2021, the Plaintiff presented to his primary care physician with severe anxiety and shortness of breath complications, which were induced by the stress, harassment, retaliation, and bullying the Plaintiff experienced at work.

28. On March 8, 2021, Bimal again interfered with the Plaintiff's grievance meeting in violation of the grievance procedure.
29. On March 22, 2021, Bimal issued another disciplinary action against the Plaintiff in retaliation for the Plaintiff making the February 24, 2021 discrimination complaint to DOT-HR, where Bimal accused the Plaintiff of lack of communication and poor performance.
30. On April 9, 2021, the Plaintiff contacted another white Construction Project Supervisor II to help testify to the EEOC, OLC & OIG about the color discrimination the Plaintiff has been receiving.
31. On April 12, 2021 the Plaintiff contacted an employee of Indian decent to testify to the EEOC, OLC & OIG about the dark skinned cast system and the color discrimination the Plaintiff has been receiving.
32. On May 9, 2021, Bimal retaliated against the Plaintiff for contacting fellow employees as potential witnesses to EEOC infractions by assigning the Plaintiff to work with Mr. Jamie McDonald. Bimal is keenly aware that Mr. Jamie McDonald has in the past religiously discriminated against the Plaintiff by telling the Plaintiff that he cannot perform his five (5) obligatory Islamic prayers on City time and City property.
33. From May 12, 2021 to January 24, 2022, the Plaintiff requested over thirteen (13) times to be transferred to another department or agency within the Baltimore the City.
34. When Ms. Jessica Lewis a 25 year old, white woman requested to be transferred for identical reasons; Ms. Jessica Lewis was transferred within days & given three (3) week paid leave for the stress she endured. The Plaintiff, who is a 46-year-old black man, was denied similar treatment and consideration.
35. The City ignored the Plaintiff's request for transfer for over five (5) months and eventually denied the Plaintiff's request for transfer.
36. On September 15, 2021, the Plaintiff complained of harassment, discrimination and hostile work environment to the Department of Human Resources (DHR) and the Office of the Inspector General (OIG).
37. On September 28, 2021, Bimal again retaliated against the Plaintiff for reporting a claim of discrimination to (DHR) & (OIG) in the form of two disciplinary actions against the

Plaintiff, which was another retaliatory act against the Plaintiff for engaging in a protected activity.

38. On September 28, 2021, the Plaintiff filed another grievance to have the two (2) five (5) day suspensions rescinded.

39. On October 27, 2021, the Office of Labor Commissioner (OLC) overturned one of Bimal's disciplinary actions against the Plaintiff.

40. On December 6, 2021, OLC overturned another one of Bimal's disciplinary actions against the Plaintiff.

41. On February 4, 2022, the Plaintiff filed a complaint of discrimination and harassment against Bimal management team to DOT-HR, DHR, the Plaintiff's Chain of Command, and to the City Mayor's Office.

42. On March 31, 2022, Bimal continued discriminating, bullying, harassing, and retaliating against the Plaintiff, as demonstrated by Bimal ordering the Plaintiff to return to the office during the COVID-19 Pandemic, when all other Senior Staff members had the option to work from home.

43. On April 9, 2022, The Plaintiff worked four (4) hours overtime and requested compensation from the Defendants.

44. On April 21, 2022, Bimal denied Plaintiff's request for overtime compensation.

45. On May 11, 2022 at approximately 4:23pm Bimal, acting as an agent for the City, used his position, power, and influence by directing that the Plaintiff be demanded and coerced into accepting management's proposed settlement agreement.

46. The Plaintiff was told that if he did not accept the proposed settlement agreement by 4:30pm, May 12, 2022, he would lose his constitutional right to due process, by having the third step in the grievance process waived.

47. On May 17, 2022, Bimal had the Plaintiff's third Step grievance hearing officially waived.

48. On June 27, 2022, the United Stated Equal Employment Opportunity Commission (hereinafter "EEOC") issued the Plaintiff a right to sue letter.

## COUNT ONE
### (RETALIATION BASED ON RACE AND ENGAGING IN A PROTECTED ACTIVITY PURSUANT TO 42 U.S.C. §1981)

49. Paragraphs 1-48 are incorporated herein as if fully set forth in full.
50. The Plaintiff engaged in protected activities when he filed complaints and grievances concerning discrimination, harassment, retaliation, and failure to pay out of title pay with the following agencies: (1) U.S EEOC; (2) Baltimore City EEOC; (3) Baltimore City Department of Transportation; (3) City of Baltimore Human Resources; (4) Baltimore City Office of the Labor Commissioner; and (5) Baltimore City Police Department.
51. As a result of the Plaintiff engaging in protected activities, the Defendants have taken numerous adverse employment actions against the Plaintiff.
52. But for the Plaintiff engaging in the above-mentioned protected activities, the Defendants took numerous adverse employment actions against the Plaintiff.

## COUNT TWO
## (RETALIATION BASED ON RACED AND ENGAGING IN A PROTECTED ACTIVITY PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT 1964)

53. Paragraphs 1-52 are incorporated herein as if fully set forth in full.
54. The Plaintiff engaged in protected activities when he filed complaints and grievances concerning discrimination, harassment, retaliation, and failure to pay out of title pay with the following agencies: (1) U.S EEOC; (2) Baltimore City EEOC; (3) Baltimore City Department of Transportation; (3) City of Baltimore Human Resources; (4) Baltimore City Office of the Labor Commissioner; and (5) Baltimore City Police Department.
55. As a result of the Plaintiff engaging in protected activities, the Defendants have taken numerous adverse employment actions against the Plaintiff.
But for the Plaintiff engaging in the above-mentioned protected activities, the Defendants took numerous adverse employment actions against the Plaintiff.

## COUNT THREE
## NEGLIGENCE

56. Paragraphs 1-55 are incorporated herein as if fully set forth in full.
57. The Defendants owed the Plaintiff a duty to conduct themselves in reasonable manner, but negligently breached that duty by:

   a. Failing to make reasonable and proper observations of Bimal's unlawful conduct and/or if reasonable and proper observations were made, failing to act thereon;
   b. Failing to adhere to Defendants' administrative and personnel manual; and
   c. Obstructing Plaintiff's grievance process; and
   d. Violating Plaintiff's right to due process; and
   e. Failing to provide Plaintiff desk audit upon request; and
   f. Failing to provide Plaintiff a position description upon request; and
   g. Refusing to pay Plaintiff overtime for work rendered; and
   h. Failing to pay Plaintiff out of title pay; and
   i. Failing to provide to Plaintiff employment evaluations; and
   j. Failing to observe or undertake the necessary precautions to avoid the discrimination, retaliation, harassment, and mistreatment towards the Plaintiff; and
   k. Bimal acting with negligent and/or reckless disregard for the safety and well being of the Plaintiff.

58. As the direct and proximate result of the Defendants' negligence, the Plaintiff sustained compensatory damages including emotional distress, pain and suffering, and mental anguish and loss of enjoyment of life.
59. The Plaintiff's damages and losses, past, present and prospective, were caused solely by the negligence of the Defendants.

## COUNT FOUR
## NEGLIGENT SUPERVISION

60. Paragraphs 1-59 are incorporated herein as if fully set forth in full.
61. Bimal works for the Defendants, City of Baltimore and DOT.
62. Bimal has incompetently failed:
    a. To provide the Plaintiff desk audits upon request; and
    b. To provide the Plaintiff a position description upon request; and
    c. To pay Plaintiff overtime for worked and services rendered; and
    d. To pay the Plaintiff out of title pay; and
    e. To provide to Plaintiff employment evaluations; and
63. Bimal incompetently and negligently retaliated and harassed the Plaintiff by:
    a. Issuing several frivolous disciplinary actions;

    b. Interfering with the Plaintiff's grievance process;

    c. Not paying the Plaintiff overtime;

    d. Forcing to the Plaintiff to report the office, when all other senior staff members were working from home.

64. The Defendants had both actual and constructive knowledge of Bimal's incompetence, because the Plaintiff reported and complained to the Defendants on many occasions.

65. Bimal acts have caused the Plaintiff injuries.

66. The Defendants' negligent supervision of Bimal is the proximate cause of the Plaintiff's injuries.

## COUNT FIVE
## RESPONDEAT SUPERIOR

67. Paragraphs 1-66 are incorporate herein as if fully set forth in full

68. The above-described acts of Bimal were committed while he was acting as an agent, servant, and or employee of Defendants, City of Baltimore and DOT.

69. The above-described acts of Bimal were committed within the scope of his agency and while furthering the business interests of Defendants, City of Baltimore and DOT.

70. As the principal for Bimal, Defendants, City of Baltimore and DOT are responsible for all of the acts committed by Bimal within the scope of her agency.

WHEREFORE, Plaintiff demands judgment for damages against the Defendants and for damages including the following:

a. Back pay, loss pay increases, 160 hour of compensation time; and

b. Wages, salary and fringe benefits; and

c. Compensatory damages over the amount of $75.000.00 including those for future loss, emotional distress, pain & suffering, mental anguish & loss of enjoyment of life; and

d. Attorneys' fees; and

e. Punitive damages; and

f. Injunctive relief (that addresses the City's systematic failures); and

g. Damages; and

h. All other relief deemed necessary and proper by the Court.

/s/ Mohamed M. Bamba
Mohamed M. Bamba, Esq.
Law Office of Mohamed Bamba
Bar Number: 21500
10015 Old Columbia Suite B-215
Columbia, MD 21046
Office: 443-656-8310
Fax: 4443-656-8309
Email: Mohamed@bambalaw.com
***Attorney for Plaintiff***

### JURY DEMAND

Pursuant to Fed. R. Civ. 38(b), the Plaintiff, Idris Abdus-Shahid, demands a jury trial.

/s/Mohamed M. Bamba
Mohamed M. Bamba, Esq.
Law Office of Mohamed Bamba
Bar Number: 21500
10015 Old Columbia Suite B-215
Columbia, MD 21046
Office: 443-656-8310
Fax: 4443-656-8309
Email: Mohamed@bambalaw.com
***Attorney for Plaintiff***