IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IDRIS ABDUS-SHAHID,
    *Plaintiff*,

v.                        Civil No. ABA-22-2367

MAYOR & CITY COUNCIL
OF BALTIMORE, *et al.*,
    *Defendants*

## MEMORANDUM OPINION

Plaintiff Idris Abdus-Shahid brings this employment retaliation action against the Mayor and City Council of Baltimore (the "City"), and Chief Bimal Devkota, in his capacity as an agent of the City (collectively, "Defendants"). Currently pending is Defendants' motion to partially dismiss the Amended Complaint (ECF No. 34). Specifically, Defendants argue that Mr. Abdus-Shahid's retaliation claims do not state claims on which relief can be granted. The issues are fully briefed, and no hearing is necessary. Loc. Rule. 105.6. For the reasons stated below, the motion to dismiss Mr. Abdus-Shahid's retaliation claims (Counts 1 and 2) will be denied.[1]

### I.    BACKGROUND[2]

Mr. Abdus-Shahid is an African American, Muslim, man who works for the City as a Construction Supervisor II in the Department of Transportation. ECF No. 32 ("Am. Compl.") ¶¶ 1, 9. He was assigned to a Project Manager position in 2020, which he alleges entitled him to out-of-title pay, *i.e.*, increased compensation for performing the duties of a higher job

---

[1] Defendants also move to dismiss Count 5, styled as a claim for "respondeat superior"; Plaintiff concedes that issue, and so the motion as to Count 5 will be granted.

[2] At this stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

classification. *Id*. ¶¶ 7, 11-13. After about six months of taking on the extra responsibilities of the new role, he formally requested out-of-title pay. *Id*. ¶ 14. But Mr. Devkota, his supervisor, rejected the request. *Id*. ¶ 15. Mr. Abdus-Shahid thereafter filed a complaint with the Department of Transportation, asserting that Mr. Devkota had denied him out-of-title pay without just cause. *Id*. ¶ 20. He alleged that the denial was the product of racial discrimination, and further alleged that Mr. Devkota, who is Hindu and of Indian descent, is "influenced by the Indian cast [sic] system." *Id*. ¶¶ 15, 16, 19, 20.

Mr. Abdus-Shahid also initiated internal grievance proceedings, pursuant to City employee policy, and sought a first- and second-step meeting with Mr. Devkota. *Id*. ¶ 21. In the three months that followed, however, Mr. Devkota allegedly refused to attend the meetings and repeatedly "interfered" in the grievance process. *Id*. ¶¶ 21-22, 28. In February 2021, Mr. Devkota issued a "disciplinary action," accusing Mr. Abdus-Shahid of poor performance and lack of communication. *Id*. ¶ 23. Mr. Abdus-Shahid contends that the reprimand was reprisal for reporting to the Baltimore City's Employee Assistance Program that Defendants allegedly had engaged in "bullying, harassment, color discrimination and retaliation." *Id*. In response, he filed a second complaint immediately and a third complaint three weeks later, challenging the merit of the disciplinary action, and alleging interference, harassment, and discrimination during his grievance procedure. *Id*. ¶¶ 24, 26. He maintains that, until then, there had been no such criticisms of his work. *Id*. ¶ 23. But a little over a month after the first disciplinary action, he acquired another—again reprimanding his supposed substandard performance and failure to communicate. *Id*. ¶ 29.

By April 2021, Mr. Abdus-Shahid had filed formal grievances with the Equal Employment Opportunity Commission ("EEOC"), the Office of the Labor Commissioner for the

City of Baltimore, and the Baltimore City Office of the Inspector General. *Id.* ¶ 30. In anticipation of substantiating his claims to these agencies, he asked two coworkers—a white Construction Project Supervisor II and another employee of Indian descent—to testify on his behalf. *Id.* ¶¶ 30, 31. About a month later, Mr. Devkota assigned Mr. Abdus-Shahid to work with another employee, who Mr. Devkota knew had before told Mr. Abdus-Shahid not to pray during the workday or on City property. *Id.* ¶ 32. Defendants subsequently ignored and eventually denied more than thirteen transfer requests from Mr. Abdus-Shahid over the next several months, while allegedly transferring a white employee "within days" of her request to be reassigned "for identical reasons." *Id.* ¶¶ 33-35.

Mr. Abdus-Shahid filed new complaints against his employer in September 2021, this time with the Department of Human Resources and the Office of the Inspector General, alleging "harassment, discrimination, and a hostile work environment." *Id.* ¶ 36. Two weeks later, Mr. Devkota dispensed two more disciplinary actions against Mr. Abdus-Shahid, which each imposed a five-day suspension. *Id.* ¶ 37. Mr. Abdus-Shahid disputed these disciplinary actions, however, and the Office of the Labor Commissioner overturned both suspensions. *Id.* ¶¶ 38-41.

In February 2022, Mr. Abdus-Shahid filed workplace discrimination and harassment complaints with the human resources office of the Department of Transportation, the Department of Human Resources for the City of Baltimore, his "Chain of Command," and the Mayor's Office. *Id.* ¶ 41. But Mr. Abdus-Shahid allegedly continued to experience discrimination at his job; according to the amended complaint, he encountered a discernable instance of disparate treatment almost monthly. Mr. Devkota "ordered" him to resume in-person work activities in March 2022; Mr. Abdus-Shahid alleges that, at the time, "all other Senior Staff members had the option to work from home." *Id.* ¶ 42. Mr. Devkota allegedly later refused to pay the overtime

rate for the hours of overtime that Mr. Abdus-Shahid had worked. *Id*. ¶¶ 43, 44. Then, in May, Mr. Devkota "used his position, power, and influence" to direct that Mr. Abdus-Shahid "be demanded and coerced" into accepting a proposed settlement agreement. *Id*. ¶ 45. The coercion allegedly involved giving Mr. Abdus-Shahid twenty-four hours to choose between accepting the settlement offer or waiving the third step of the grievance process (along with his constitutional right to due process). *Id*. ¶ 46. Allegedly because Mr. Abdus-Shahid refused to agree to the proposal terms, Mr. Devkota "had [Mr. Abdus-Shahid's] third [s]tep grievance officially waived." *Id*. ¶ 47.

Mr. Abdus-Shahid received a letter from the EEOC in June 2022, informing him of his right to sue. *Id*. ¶ 48.  In September, he sent the City a letter stating his intent to pursue claims before initiating the instant action. ECF Nos. 20-2, 23-6 at 2. The original five-count complaint asserted violations of federal anti-retaliation law and negligence claims under state law, and identified various theories of secondary liability. ECF No. 1. The City filed a partial motion to dismiss, arguing that the writing it received from Mr. Abdus-Shahid before he filed suit did not comply with the notice requirements of the Maryland Local Government Tort Claims Act ("LGTCA"), precluding recovery on his negligence claims. ECF No. 17. The Department of Transportation, then a listed defendant to the action, sought dismissal as well, based on its status as a City government entity not subject to suit. *Id*. Mr. Abdus-Shahid countered with a response to the motion and a second amended complaint, withdrawing his claims against the Department of Transportation, and naming Mr. Devkota as a defendant. ECF Nos. 18, 19. Mr. Devkota moved for a more definite statement as to the capacity which he was being sued, and both he and the City reiterated that Mr. Abdus-Shahid was statutorily barred from recovery in a second partial motion to dismiss. ECF No. 20.

This Court (Judge Gesner) denied the second partial motion to dismiss, concluding that Mr. Abdus-Shahid had complied substantially with the LGTCA. ECF No. 30. Mr. Abdus-Shahid filed another amended complaint at the end of June 2023, which clarified that Mr. Devkota was being sued in his official capacity, rather than personally. ECF No. 32.

Defendants filed the pending motion to dismiss in July 2023. ECF No. 34.

## II.     ANALYSIS

Defendants have moved to dismiss Counts 1 and 2 of the amended complaint as failing to state cognizable claims for retaliation, either under 42 U.S.C. § 1981 (Count 1) or Title VII of the Civil Rights Act of 1964 (Count 2). The Court disagrees, and denies the motion.[3]

### A.     Standard of Review

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In reviewing a complaint for its sufficiency, the Court is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A claim is plausible if the facts allow the Court to reasonably infer liability for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Proving the "mere possibility of misconduct" is not enough to plead a plausible claim. *Id*.

---

[3] As noted above, Defendants also moved to dismiss Count 5, styled as a claim for "Respondeat Superior." Mr. Abdus-Shahid has conceded that Count 5 does not state an independent claim on which relief can be granted, ECF No. 35 at 4, and thus Count 5 will be dismissed (with prejudice).

### B.  Retaliation Claims (Counts 1 & 2)

Mr. Abdus-Shahid claims that Defendants unlawfully retaliated against him in response to his official complaints that denial of his out-of-title pay was the product of racial discrimination. He has brought retaliation claims under 42 U.S.C. § 1981 (Count 1) and Title VII of the Civil Rights Act of 1964 (Count 2). These claims require identical elements of proof and may be considered together. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015); *see also CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008) (explaining that "§ 1981 encompasses retaliation claims"). A plaintiff claiming retaliation must ultimately prove that the employer took an adverse action because of the plaintiff's opposition to employment practices made unlawful by Title VII, or participation in an investigation, proceeding, or hearing under Title VII, also known as "protected activity." 42 U.S.C. § 2000e–3(a); *see also Holloway v. Maryland*, 32 F.4th 293, 299-300 (4th Cir. 2022). Thus, to state a claim of retaliation here, Mr. Abdus-Shahid must plausibly allege that (1) he was engaged in a "protected activity," (2) Defendants took an adverse action against him, and (3) Defendants took one or more adverse actions as a result of his engagement in protected activity. *See, e.g.*, *Franovoch v. Hanson*, -- F. Supp. 3d. --, 2023 WL 5297673, at *8-9 (D. Md. Aug. 17, 2023). The Court will consider each element in turn.

#### i.  Engagement in a Protected Activity

The first element of a retaliation claim requires Mr. Abdus-Shahid to plausibly allege that he was engaged in a "protected activity," specifically having "opposed any practice made an unlawful employment practice by [Title VII]" (the "opposition" clause) or having "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]" (the "participation" clause). 42 U.S.C. § 2000e-3. Here, Mr. Abdus-Shahid expressly alleges that he filed internal grievances as well as formal complaints with

6

numerous law enforcement agencies, including the EEOC, alleging that his employer had engaged in racial discrimination, harassment, and retaliation. Am. Compl. ¶¶ 20, 24, 26, 30, 31, 36, 41. Accepting as true that he indeed submitted these filings, Mr. Abdus-Shahid has pled the first element of unlawful retaliation.

### ii. Adverse Action

To plead the second element of retaliation, Mr. Abdus-Shahid must plausibly allege that Defendants took "adverse action" against him. *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018). An adverse action for purposes of a retaliation claim need not "affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). But if there is no injury or harm, the statute does not apply. *Id*. at 57. The antiretaliation provision of Title VII extends to "employer actions that would have been materially adverse to a reasonable employee or job applicant." *Id.* Employer actions are materially adverse when they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*.

Mr. Abdus-Shahid alleges that Defendants engaged in a series of retaliatory actions that he contends each individually, and all taken together, stem from the protected activity set forth above. Specifically, Mr. Abdus-Shahid principally alleges that Defendants engaged in cognizable adverse actions when (1) rather than meeting with Mr. Abdus-Shahid in compliance with City policies, Mr. Devkota issued a disciplinary action in February and another in March 2021, alleging substandard performance and poor communication, allegations he contends were meritless, Am. Compl. ¶¶ 21-23, 28-29; (2) Mr. Abdus-Shahid was reprimanded twice more in September 2021, followed by five-day suspensions, which were later overturned, *id*. ¶ 37, and (3) Mr. Abdus-Shahid was reassigned in May 2021 to work alongside an employee who Mr.

Devkota allegedly knew had previously discriminated against Mr. Abdus-Shahid, *id.* ¶¶ 32-35.

The Court need not decide whether one or more of those allegedly retaliatory actions *standing alone* constitutes a cognizable "adverse action." Whether a particular reprimand, a negative performance evaluation, or a reassignment of duties, would "dissuade a reasonable worker from making or supporting a charge of discrimination" depends on the circumstances; "context matters." *See Burlington*, 548 U.S. at 57, 69. The Court, of course, cannot know at this stage whether any of these allegations will be proven. But at this early stage, where each of Mr. Abdus-Shahid's factual allegations must be accepted as true and the inferences therefrom drawn in his favor, these allegations, particularly taken together, plausibly state facts sufficient to satisfy the adverse action element of a retaliation claim.

### iii.  Allegation of a Plausible Causal Link

A plaintiff seeking relief for allegedly unlawful retaliation under Title VII or § 1981 must allege (and later prove) that not only did the plaintiff engage in "protected activity," and the defendant engaged in "adverse action," but also that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 360 (2013). Mr. Abdus-Shahid may plead the causation element of his retaliation claim by proceeding through either of "two routes." *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 447 (D. Md. 2022) (quoting *Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 117 (4th Cir. 2021)). First, he may allege "the existence of facts that suggest that the adverse action occurred because of the protected activity." *Id*. (quoting *Johnson v. U.S. Parcel Servs., Inc.*, 839 F. App'x 781, 783-84 (4th Cir. 2021)) (internal quotations omitted). This route requires him to "show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Roberts*, 998 F.3d at 124. Alternatively, Mr.

Abdus-Shahid may plead a causal connection by alleging "that the adverse act bears sufficient temporal proximity to the protected activity." *Johnson*, 839 F. App'x at 784. "The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action." *Roberts*, 998 F.3d at 123.

Here, Defendants are alleged to have been aware of Mr. Abdus-Shahid's filings and that they either knew or should have known those filings constituted protected activities. Am. Compl. ¶¶ 19, 21, 22. Moreover, the close temporal proximity between the plausibly alleged adverse actions and Mr. Abdus-Shahid's measures to advance his original discrimination claim raises at least an inference of causation. Mr. Abdus-Shahid received his second disciplinary action seven weeks after his first, and less than a month after reporting the original reprimand as discriminatory and frivolous. Am. Compl. ¶¶ 23, 24, 29. His suspensions were imposed two weeks after he complained to the Department of Human Resources and the Office of the Inspector General about discriminatory employment conditions, and he was transferred a month after asking coworkers to testify on his behalf about Defendants' purported discrimination. *Id*. ¶¶ 30-32, 36-37. Although temporal proximity is not *required* to establish causation for a retaliation claim, *see, e.g.*, *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (noting that "other relevant evidence may be used to establish causation" where temporal proximity cannot be shown), the alleged close temporal proximity between Mr. Abdus-Shahid's complaints of discrimination and the alleged adverse actions permit a reasonable inference of causation.

Accordingly, Mr. Abdus-Shahid has adequately alleged a causal link between the protected activity and the alleged reprimands and reassignment.

### III.     CONCLUSION

For the foregoing reasons, Counts 1 and 2 state claims that may proceed to discovery; Defendants' motion to dismiss Counts 1 and 2 is denied.

A corresponding order follows.

Date: February 12, 2024                                    /s/
                                                           Adam B. Abelson
                                                           United States Magistrate Judge